Lara P. Besser (SBN 282289)
Maya N. Ramos (SBN 346151)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Lara.Besser@jacksonlewis.com
Maya.Ramos@jacksonlewis.com

Attorneys for Defendants
Clipper Magazine, LLC, Valpak Direct
Marketing Systems LLC, and Valpak
Franchise Operations LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACEY COLE, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLIPPER MAGAZINE, LLC, a Limited Liability Company; VALPAK DIRECT MARKETING SYSTEMS, LLC, a Limited Liability Company; VALPAK FRANCHISE OPERATIONS, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: '26CV4758 WQHDEB<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(b)**<br><br>*[Filed concurrently with Civil Cover Sheet; Declarations of Lara P. Besser and Carey Cooper, and Exhibits Thereto; Corporate Disclosure Statement; and Notice of Interested Parties]*<br><br>Judge:<br>Mag. Judge:<br><br>State Complaint Filed: July 9, 2026 |

**TO THE HONORABLE JUDGE AND CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendants CLIPPER MAGAZINE, LLC, VALPAK DIRECT MARKETING SYSTEMS, LLC, and VALPAK FRANCHISE OPERATIONS, LLC (collectively "Defendants") hereby invoke this Court's jurisdiction under 28 U.S.C. sections 1332 and 1441(b) and removes the above-entitled action from the Superior Court of the State of California in and for the County of San Diego (the "Superior Court") to the United States District Court for the Southern District (the "Court"). The following statement of grounds for removal is submitted pursuant to the provisions of 28 U.S.C. section 1446.

## I. PLEADINGS AND PROCESS

1. On July 9, 2026, Plaintiff Lacey Cole ("Plaintiff") filed a civil class action complaint (the "Complaint") against Defendants in the Superior Court of the State of California in and for the County of San Diego entitled *Lacey Cole v. Clipper Magazine, LLC, et al.*, Case No. 26CU036891C, which alleges putative classes of:

- "all individuals who are or previously were employed by Clipper Magazine LLC and/or Valpak Direct Marketing Systems, LLC and/or Valpak Franchise Operations, LLC in California, including any employees staffed with Clipper Magazine LLC and/or Valpak Direct Marketing Systems, LLC and/or Valpak Franchise Operations, LLC by a third party, and classified as non-exempt employees (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD").

(See Cooper Decl. ¶ 3, Exhibit A at ¶¶ 7 and 28.[1])

The Complaint also sets forth the following nine causes of action: (1) Unfair Competition in Violation of California Business and Professions Code §§ 17200 et seq.;

[1] A true and correct copy of the Complaint filed by Plaintiff is attached to the Declaration of Carey Cooper ("Cooper Decl.") as **Exhibit A**.

(2) Failure to Pay Minimum Wages in Violation of Cal. Lab. Code §§ 1194, 1197, & 1197.1; (3) Failure to Pay Overtime Wages in Violation of Cal. Lab. Code § 510; (4) Failure to Provide Required Meal Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (5) Failure to Provide Required Rest Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (6) Failure to Provide Accurate Itemized Statements in Violation of Cal. Lab. Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of Cal. Lab. Code § 2802; (8) Failure to Provide Wages When Due in Violation of Cal. Lab. Code §§ 201, 202,& 203; and (9) Failure to Pay Sick Pay Wages in Violation of Cal. Lab. Code §§ 201-203, 233, 246. (*Id.* at Exhibit A.)

2. On July 21, 2026, Plaintiff, through her counsel, served Valpak Franchise Operations, LLC. On July 23, 2026, Plaintiff, through her counsel, served Valpak Direct Marketing Systems, LLC. On July 31, 2026, Plaintiff, through her counsel, served Clipper Magazine, LLC. (*Id.* at ¶ 3.)

3. Defendants are informed and believe they are the only named defendants in the Complaint and that no other party has been properly joined or served with the Complaint. *Id.* at ¶ 4; *see also* 28 U.S.C. § 1446(2)(A) ("all defendants who have been properly joined and served must join in and consent to the removal of the action.").

4. On August 19, 2026, Defendant filed and served an Answer to the Complaint in the San Diego County Superior Court. (See Besser Decl.. at ¶ 4, Exhibit B.[2])

## II. REMOVAL IS TIMELY

5. This Notice of Removal has been filed within thirty (30) days after Defendants were deemed served a copy of Plaintiff's Summons and Complaint upon which this action is based. Under California Code of Civil Procedure section 415.10, personal service of a summons and complaint are deemed complete on the date the personal delivery is made. Cal. Civ. Code § 415.10. Defendants were served on July 21, 2026 (Valpak Franchise

[2] A true and correct copy of the Answer filed by Defendant is attached to the Declaration of Lara P. Besser ("Besser Decl.") as **Exhibit B**.

Operations), July 23, 2026 (Valpak Direct Marketing Systems), and July 31, 2026 (Clipper Magazine). (Cooper Decl. ¶ 3.) This Notice of Removal is therefore filed within the period provided by 28 U.S.C. § 1446(b).

## III. NOTICE TO SUPERIOR COURT AND ALL PARTIES

6. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Diego Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

## IV. VENUE IS PROPER

7. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

8. This action was initially filed in San Diego Superior Court, which sits in the Southern Judicial District of California. 28 U.S.C. § 84(d). Thus, for purposes of Removal, venue properly lies in this District Court.

## V. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER 28 U.S.C § 1332(a)

9. This case meets the requirements of 28 U.S.C. section 1332(a) and may be removed to this Court pursuant to 28 U.S.C section 1441 because it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C §§ 1332(a), 1441.

### A. Complete Diversity Exists Between Plaintiff and the "Properly Joined and Served" Defendants

#### a. Plaintiff Is a Citizen of California.

10. For purposes of determining diversity of citizenship, an individual is deemed a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "[A] person is 'domiciled' in a location where he or she has

established a 'fixed habitation or abode in a particular place, and intend to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986) (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940). A plaintiff's place of residency is evidence of his or her domicile absent affirmative allegations to the contract. *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a[n] [individual] lives is properly taken to be his domicile until facts adduced establish the contrary."); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (noting a party's residence is prima facie evidence of his or her domicile); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("the place of residence is prima facie the domicile").

11. Per the Complaint, Plaintiff Lacey Cole was employed by Defendants in California from June 2015 to December 2025 and worked in San Diego County. (Besser Decl. ¶ 2, Exhibit A at ¶¶ 6, 27.)

12. According to Defendants' records, Plaintiff resided in California throughout her employment with Defendants. (Cooper Decl. ¶ 7.) At all times during her employment with Defendants, Plaintiff's pay was issued from California. (Id.) Plaintiff's personnel records on file with Defendants list her home address as 1730 Swallowtail Road, Encinitas, CA 92024. (Id.) This Encinitas address is listed on various tax forms, onboarding documents, and direct deposit forms. (Id.)

13. Accordingly, Plaintiff is now, and at the time this action commenced, a citizen of the State of California within the meaning of U.S.C. section 1332(a).

**b. Defendants Clipper Magazine LLC, Valpak Direct Marketing Systems, LLC, and Valpak Franchise Operations, LLC Are Citizens of Delaware.**

14. For the purposes of diversity jurisdiction, a limited liability company is a citizen of every state of which its owners/members are a citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). A party may establish the citizenship of members of a limited liability company that are corporate entities by establishing the state of organization of those entities and their principal places of business.

*See Ha Nguyen v. BMW of N. Am, LLC*, No. 3:20-cv-02432-JLS-BLM, 2021 U.S. Dist. LEXIS 111189, at *4 (S.D. Cal., 2021).

15. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. 1332(c); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Id.* at 80-81. Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control, and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id.*

16. Diversity of citizenship is determined "as of the time the complaint is filed and removal is affected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

17. At all times alleged in the operative Complaint, Defendants Clipper Magazine LLC, Valpak Direct Marketing Systems, LLC, and Valpak Franchise Operations, LLC were limited liability companies organized and existing under and by virtue of the laws of the State of Delaware. (Cooper Decl. ¶¶ 5-6.)

18. It is well settled that a limited liability company is a citizen of every state of which its owners/members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). When an LLC is owned by another LLC, courts trace the citizenship up through the chain until reaching a corporate member, at which point the corporation's citizenship (state of incorporation and principal place of business) controls. *See id.*

19. Here, Clipper Magazine LLC is a limited liability company whose sole member is Clipper Media Acquisition, LLC. (Cooper Decl. ¶ 5.) Clipper Media Acquisition, LLC, in turn, has a single member: Clipper Media Holdings, Inc. (Id.) Clipper

Media Holdings, Inc. is a Delaware corporation with its principal place of business in Florida at 1 Valpak Avenue North, St. Petersburg, FL 33716. (Id.) Therefore, Defendant Clipper Magazine LLC is a citizen of Delaware and Florida. (Id.)

20. Valpak Direct Marketing Systems, LLC and Valpak Franchise Operations, LLC are also limited liability companies organized under the laws of the State of Delaware. (Cooper Decl. ¶ 6) They are each wholly-owned by V P Holdings, LLC, a Delaware LLC, which in turn is wholly-owned by Pak Acquisition Corporation, a Delaware corporation, with its principal place of business in St. Petersburg, Florida. (Id.) Therefore, Defendants Valpak Direct Marketing Systems, LLC and Valpak Franchise Operations, LLC, are citizens of Delaware and Florida. (Id.)

21. Thus, because the corporate members at the top of each ownership chain for all Defendants are Delaware corporations with their respective principal places of business in Florida, Defendants are citizens of Delaware and Florida for diversity purposes.

**c. The Citizenship of Fictitiously Named Defendants Should be Disregarded.**

22. Pursuant to Section 1441(b)(1), the citizenship of defendants sued under fictitious names must be disregarded for the purposes of determining diversity of citizenship between the parties to an action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (holding the "district court was correct in only considering the domicile of the named defendants"). Defendants are informed and believe, and on that basis asserts, that no other defendant in this action has been properly joined and served as provided in Section 1441(b)(2). (Besser Decl., ¶ 3.)

23. Thus, with Plaintiff, as a citizen of California, and Defendants, as citizens of Delaware and Florida, complete diversity of citizenship between the parties exists within the meaning of 28 U.S.C. section 1332.

/ / /

/ / /

/ / /

### B. Plaintiff's Allegations Place More Than $75,000 in Controversy.

24. While Defendants deny any liability, deny that Plaintiff is entitled to damages, and deny that Plaintiff could recover damages in any amount whatsoever, the amount in controversy more likely than not exceeds $75,000.00 based on the allegations, claims, and prayer for relief in the Complaint. Without admitting that Plaintiff could recover any damages or adequately represent a class, Defendants assert that the amount in controversy in this action could exceed $75,000 just based on Plaintiff's alleged individual wage claims for damages and penalties.

25. Plaintiff alleges in paragraph 25 of the Complaint that her "individual amount in controversy does not exceed $75.000." (Carey Decl. ¶3, Ex. A.) Defendants respectfully submit that this allegation is not dispositive of federal jurisdiction. The amount in controversy is determined by the value of the claims placed at issue by the Complaint and the relief sought, not merely by a plaintiff's characterization of that amount. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F. 3d 373, 377 (9th Cir. 1997); *Chavez v. JPMorgan Chase & Co.*, 888 F. 3d 413, 416-17 (9th Cir. 2018). To the extent Plaintiff attempts to plead below the jurisdictional threshold, courts may nevertheless examine the allegations of the complaint and competent evidence regarding the amount placed in controversy by the claims asserted. *See Guglielmino v. McKee Foods Corp*, 506 F. 3d 696, 699-701 (9th Cir. 2007). Ordinarily, a defendant need only demonstrate by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (courts may consider factual statements in defendant's notice of removal in assessing removal jurisdiction). However, whether the Court applies the ordinary preponderance standard or the heightened legal-certainty standard discussed in *Guglielmino*, removal is proper because Plaintiff's own allegations place more than $75,000 in controversy. As set forth below, Plaintiff's alleged individual damages and penalties total approximately $77,077.17 before any award of attorneys' fees is considered.

26. In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgment-type evidence. *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 908 (9th Cir. 2005); *Singer, supra*, 116 F.3d at 376. The ultimate inquiry is what amount is placed "in controversy" by the Complaint and not the amount that a defendant would owe if the plaintiff prevailed. *Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 401 (2010); *see also Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy."). The "amount in controversy is simply an estimate of the total amount in dispute." *Lewis*, 627 F.3d at 400.

27. In determining the amount in controversy, the Court must presume the plaintiff will prevail on each and every one of his or her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) ("a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint") (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability")), superseded by statute on other grounds by 29 U.S.C. § 1446, and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

28. Attorneys' fees also may be taken into account to determine the jurisdictional amount. *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945; *see also Alvarado v. Home Depot U.S.A., Inc.*, Case No. 18-cv-611-MMA(NLS), 2018 U.S. Dist. LEXIS 95435, at *7-10 (S.D. Cal. June 5, 2018) (post-removal attorney fees are included in the amount in controversy).

29. Here, Plaintiff seeks recovery for (1) unpaid minimum wages; (2) unpaid overtime wages; (3) meal period premium wages; (4) rest period premium wages; (5) waiting time penalties; (6) wage statement penalties; (7) expense reimbursement; (8)

interest; and (9) reasonable attorneys' fees and costs. (Cooper Decl. ¶ 3, Exhibit A, Prayer for Relief.)

30. Defendants have a reasonable, good faith belief that Plaintiff seeks damages, *on an individual basis*, in excess of the jurisdictional requirement of $75,000.00 based upon Plaintiff's allegations and Prayer for Relief, for the following reasons:

**a. Unpaid Wages and Overtime**

1. While Defendants vigorously deny Plaintiff's allegations, Plaintiff alleges that Defendants failed to pay her and other employees for all time worked, including requiring off-the-clock work and failing to properly calculate the regular rate of pay for overtime and premium payments. (Cooper Decl. ¶ 3, Exhibit A at ¶¶ 11-13.) Under California Labor Code section 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . " Cal. Lab. Code §1194(a). Overtime hours must be paid at one and one-half times an employee's regular rate of pay. Cal. Lab. Code § 510. Double time hours must be paid at twice an employee's regular rate of pay. *Id.*

31. In her Complaint, Plaintiff alleges that Defendants "require[] PLAINTIFF and CALIFORNIA CLASS Members to work without paying them for all the time they are under DEFENDANT's control" and that "PLAINTIFF and other CALIFORNIA CLASS Members forfeit minimum wage, overtime wage compensation, and off-duty meal breaks by working without their time being correctly recorded and without compensation at the applicable rates." (Cooper Decl. ¶ 3, Exhibit A at ¶ 11.) At the time Plaintiff's employment terminated, Plaintiff was earning $45,011.20 annually as an exempt outside sales consultant. (Cooper Decl. ¶8.) If, hypothetically, Plaintiff were misclassified as exempt, her hourly rate would have been approximately $21.64 per hour. This is a conservative estimate for removal as with Defendants' compensation plan, Plaintiff had the ability to earn greater than her base salary, with bonuses ranging from $5,000.00 to $90,000.00.

/ / /

32. Plaintiff had been employed with Clipper for over ten years until her last day of employment on December 31, 2025. (Cooper Decl. ¶ 9.) She worked full time, five days a week. Within the four year statute of limitations of her claim, she worked 182 workweeks. (*Id.*)

33. Given the Complaint's allegations regarding Defendants' "unlawful practices and policies," it is reasonable to estimate for purposes of the amount in controversy for removal purposes that Plaintiff worked 1 hour of unpaid overtime per shift. *See Zamora v. Penske Truck Leasing Co., L.P.*, No. 2:20-cv-02503-ODW, 2020 WL 4748460, at *5 (C.D. Cal. Aug. 17, 2020) (finding that 10% violation rate was reasonable). Plaintiff worked full time, five days a week. (Cooper Decl. ¶ 8.) Thus, Plaintiff's individual exposure for off-the-clock overtime claims is approximately **<u>$29,491.53</u>** ($21.64 average hourly rate x 1.5 overtime premium x 5 hours of unpaid overtime per workweek x 182 workweeks.

34. These damages combined with the meal period premiums, rest period premiums, waiting time penalties, wage statement penalties, unreimbursed business expenses and attorneys' fees discussed below easily exceed the $75,000.00 jurisdictional threshold.

### b. Meal and Rest Period Premium Wages

35. Plaintiff alleges that Defendants failed to provide legally required meal and rest periods. (Cooper Decl. ¶ 3, Exhibit A at ¶¶ 14-15.) California law requires employers to provide employees a duty-free, uninterrupted thirty (30) minute meal period when an employee works more than five (5) hours in a workday. Cal. Lab. Code § 512. Employers must also authorize and permit employees to take rest periods of ten (10) minutes per four (4) hours worked. Cal. Lab. Code § 1198; IWC Wage Orders. If an employer fails to provide a meal or rest period, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. Cal. Lab. Code § 226.7(c).

36. While Defendants vigorously deny Plaintiff's allegations, if Plaintiff prevailed on her meal and rest period claims, she would be entitled to one hour of premium

pay for each workday a compliant meal period was not provided and one hour of premium pay for each workday a compliant rest period was not provided.

37. In her Complaint, Plaintiff alleges that Defendants "require[d] PLAINTIFF and CALIFORNIA CLASS Members to work without paying them for all the time they are under DEFENDANT's control" and that Defendant "require[d] PLAINTIFF to work while clocked out during what [was] supposed to be PLAINTIFF'S off-duty meal break. (Carey Decl. ¶3, Ex. A at ¶ 11.) Furthermore, Plaintiff alleges that "DEFENDANT, as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked and recorded by PLAINTIFF …." Resulting in Plaintiff forfeiting minimum wage, overtime wage compensation, and off-duty meal breaks by working without the time being correctly recorded. (Id.) Plaintiff also alleges that she was "from time to time unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods." (Cooper Decl. ¶ 3, Exhibit A at ¶ 14.) Plaintiff further alleges that Defendants' "*policy* restricted PLAINTIFF and other CALIFORNIA CLASS Members from unconstrained walks" during rest periods and that employees "cannot leave the work premises during their rest period." (Cooper Decl. ¶ 3, Exhibit A at ¶ 15 [emphasis added].) Critically, Plaintiff does not allege isolated or sporadic meal and rest period violations; rather, she attributes these violations to Defendants' systematic, company-wide policies and uniform practices. Because Plaintiff's own allegations characterize these violations as the product of established policies that applied throughout her employment, it follows that every workday Plaintiff worked under these policies would have been affected. Accordingly, a 100% assumed violation rate for purposes of satisfying the amount in controversy element for removal is supported by Plaintiff's policy-based allegations, resulting in five hours of meal period premium wages and five hours of rest period premium wages owed per workweek. *See Mendoza v. Nat'l Vision, Inc.*, No. 19-cv-01485-SVK, 2019 U.S. Dist. LEXIS 112984, at *20 (N.D. Cal. July 8, 2019) (approving a 100% violation rate where the complaint alleged a uniform policy of violating various Labor Code provisions); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 U.S.

Dist. LEXIS 60078, at *6-7 (C.D. Cal. May 5, 2016) (finding a 100% violation reasonable where the plaintiff alleged violations occurred "at all material times" because of a "uniform policy/practice of wage abuse"). At the time of termination, Plaintiff's regular rate of pay was $21.64 per hour. (Cooper Decl. ¶ 8.) Plaintiff's individual exposure for meal period premium claims is approximately $19,661.02 ($21.64 average hourly rate x 5 hours of meal premium wages owed x 182 workweeks), and her rest period premium claim is approximately $19,661.02 ($21.64 average hourly rate x 5 hours of rest period premium wages owed x 182 workweeks), for a combined total of approximately **$39,322.04** in meal and rest period premiums.

**c. Waiting Time Penalties**

38. Plaintiff alleges that Defendants failed to pay all wages owed upon termination, including vested vacation time. (Cooper Decl. ¶ 3, Exhibit A at ¶ 111.) Labor Code Section 203 provides "waiting time" penalties to an employee for an employer's failure to pay all wages owed at termination in the amount of one day's wages for each day all owed wages remain unpaid, up to a maximum of thirty days. Cal. Lab. Code § 203(a).

39. While Defendants vigorously deny Plaintiff's allegations, if Plaintiff prevailed on her waiting time penalty claim, she would be entitled to up to thirty days of wages as a penalty. Plaintiff alleges that "DEFENDANT regularly failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages and accordingly owe waiting time penalties pursuant to Cal. Lab. Code Section 203." (Cooper Decl. ¶ 3, Exhibit A at ¶ 21.) Based on Plaintiff's allegations that she did not receive all her wages due at separation; Plaintiff is owed waiting time penalties for the maximum penalty of thirty days of wages. *See Naranjo v. Spectrum Security Servs., Inc.*, 13 Cal. 5th 93 (2022) (holding that meal and rest break premium pay constitutes "wages" that can trigger waiting time penalties when unpaid at separation). At the time of termination, Plaintiff's regular rate of pay was $21.64 per hour. (Cooper Decl. ¶8.) As such, Plaintiff's individual exposure for waiting time penalties under Labor Code Section 203 is approximately **$5,193.60** ($21.64 average hourly rate x 8 hours per day x 30 days

maximum penalty).

**d. Wage Statement Penalties and Reimbursement of Business Expenses**

40. Plaintiff also alleges that Defendants failed to provide accurate itemized wage statements in violation of California Labor Code section 226. (Cooper Decl. ¶3, Exhibit A at ¶¶ 16-17.) Plaintiff specifically alleges that "the wage statements failed to identify the accurate total hours worked each pay period" and that "[w]hen the hours shown on the wage statements were added up, they did not equal the actual total hours worked during the pay period." (Cooper Decl. ¶ 3, Exhibit A at ¶ 17.) Labor Code Section 226(e) permits employees to recover the greater of actual damages or fifty dollars ($50) for the initial pay period violation and one hundred dollars ($100) for each subsequent violation, up to a maximum of $4,000. Cal. Lab. Code § 226(e).

41. Based on Plaintiff's allegations and considering this claim is derivative of Plaintiff's minimum and overtime wage claims, and meal and rest break claims, it is assumed for purposes of the amount in controversy that wage statements received within the one-year statute of limitations were inaccurate in violation of Labor Code section 226(a). *See Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93 (2022) (holding that because premium pay for missed meal and rest breaks constitute wages, failure to pay such premiums will trigger derivative claims for wage statement and waiting time penalties).

42. Within the one-year statute of limitations for her wage statement claim, Plaintiff worked 13 pay periods. As such, Plaintiff's individual exposure for wage statement penalties is approximately **<u>$1,250.00</u>** ($50 for the initial pay period violation + $100 x 12 subsequent pay period violations).

43. Additionally, Plaintiff alleges that Defendants "required by DEFENDANT to use their own personal cellular phones as a result of and in furtherance of their job duties" and that Defendants failed to reimburse Plaintiff for "costs related to the use of their personal cellular phones." (Cooper Decl. ¶ 2, Exhibit A at ¶ 24.) California Labor Code section 2802 requires employers to indemnify employees for all necessary expenditures

incurred in the discharge of their duties. Cal. Lab. Code § 2802(a). Based on Plaintiff's allegations that Defendants required her to use her personal cell phone to perform work-related tasks without reimbursement, it is reasonable to estimate a minimum weekly expense of $10.00 for work-related cellular phone usage, which represents a conservative estimate of the proportionate share of a typical monthly cell phone bill attributable to work use. As such, Plaintiff's individual exposure for expense reimbursement claims is approximately **$1,820.00** ($10 estimated weekly expense x 182 workweeks).

**e. Attorney's Fees**

44. In her Complaint, Plaintiff seeks attorneys' fees. (Besser Decl. ¶ 2, Exhibit A, Prayer for Relief.) Attorneys' fees may be considered to determine the jurisdictional amount. *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982), *cert. denied*, 459 U.S. 945 (1982). Plaintiff's reasonable attorneys' fees are recoverable for violations of the Labor Code. *See* Cal. Lab. Code §§ 218.5, 226(e), 1194. Attorneys' fees in individual employment cases often exceed damages. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).

45. District Courts have held that a "conservative estimate of attorney's fees" in employment matters adheres to a formula used in *Sasso v. Nobel Utah Long Beach, LLC*, 2015 U.S. Dist. LEXIS 25921 (C.D. Cal. 2015); *Mendez v. Wal-Mart Assocs.*, Case No. 3:22-cv-02026-W-MDD, 2023 U.S. Dist. LEXIS 37278, *8 (S.D. Cal. March 6, 2023). Specifically, District Courts have held that $300 per hour for 100 hours "is an appropriate conservative estimate of the number of hours expended through trial for an employment action," meaning a conservative estimate of attorneys' fees for purposes of determining the amount in controversy is **$30,000**. *Id*. When combined with the unpaid wages, meal and rest period premiums, waiting time penalties, and wage statement penalties discussed above, the amount in controversy exceeds the jurisdictional minimum.

46. Here, Plaintiff is represented by Kyle R. Nordrehaug, Aparajit Bhowmik, Nicholas J. De Blouw, and Jeffrey S. Herman of Blumenthal Nordrehaug Bhowmik De Blouw LLP. (Besser Decl. ¶ 2, Exhibit A at p. 1.) In *Henry v. Central Freight Lines, Inc.*,

Case No. 2:16-cv-00280-DAD-JDP (E.D. Cal.), Mr. Nordrehaug submitted a declaration establishing his firm's billing rates: Partner Attorneys from $695 to $950 per hour, Associate Attorneys from $475 to $750 per hour, and Paralegals from $175 to $275 per hour. (Besser Decl. ¶6-7, Exhibit C, Declaration of Kyle Nordrehaug ¶ 4.) Mr. Nordrehaug's declaration further states that these rates are based on the Laffey Matrix with an appropriate adjustment for Southern California and have been approved by courts throughout California. (Id.) Notably, these rates were established in 2024; it is reasonable to assume that Plaintiff's counsel's rates have only increased since that time. (Id.) Based on Plaintiff's counsels' experience in wage and hour litigation, it is not unreasonable to expect a blended billing rate of at least $695. *See Cruz v. Nike Retail Servs, Inc.*, 346 F.R.D. 107, 117 (S.D. Cal. Apr. 3, 2024) (finding an hourly rate of $550 to be "reasonable" in employment cases); *see also Velazquez v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 202124, at *7 (C.D. Cal. Mar. 11, 2013) (finding an hourly rate of $600 to be "reasonable" in employment case). At a blended rate of $695/hour, attorneys' fees would reach **$69,500** after just 100 billable hours.

**f. Summary of Plaintiff's Individual Estimated Damages**

47. In sum, Plaintiff's total alleged individual exposure for purposes of satisfying the amount in controversy for removal is approximately $77,077.17, excluding attorneys' fees. When combined with reasonable attorneys' fees of between $30,000 to $69,500, Plaintiff's allegations satisfy the jurisdictional prerequisite that the amount in controversy exceeds $75,000 (total of $107,074.28 - $146,574.28).

| **CLAIM** | **AMOUNT IN CONTROVERSY** |
|---|---|
| Overtime | $29,491.53 |
| Meal Period | $19,661.02 |
| Rest Period | $19,661.02 |
| Expense Reimbursement | $1,820.00 |
| Waiting Time Penalties | $5,193.60 |

| | |
|---|---|
| Inaccurate Wage Statements | $1,250.00 |
| Attorneys' Fees | $30,000 - $69,500 |
| **TOTAL** | **$107,077.17 - $146,577.17** |

## VI. CONCLUSION

48. WHEREFORE, Defendants remove the above-entitled action now pending in the Superior Court of the State of California in and for the County of San Diego to this Court.

DATED: August 19, 2026

JACKSON LEWIS P.C.

By: *s/ Lara Besser*

Lara P. Besser
Maya N. Ramos

Attorneys for Defendants
Clipper Magazine, LLC, Valpak Direct Marketing Systems, LLC, and Valpak Franchise Operations, LLC

4938-6914-7078, v. 1